Filed 6/4/25  P. v. Giro CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C100748 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-190185) |
| v. | |
| KYLE AUSTIN GIRO, | |
| Defendant and Appellant. | |

After the denial of his request for pretrial mental health diversion under Penal Code section 1001.36, defendant Kyle Austin Giro pleaded no contest to assault with a deadly weapon.[1]  In exchange, he received two years formal probation and participation in post-plea mental health court.  On appeal, he contends that the trial court abused its discretion in ruling that he was unsuitable for pretrial diversion.  Specifically, Giro argues

_____

[1]  Undesignated statutory references are to the Penal Code.

1

that insufficient evidence supports the court's determination that he was at risk of committing a super strike offense. We conclude that Giro has failed to show that the trial court abused its discretion in making that determination. Accordingly, we will affirm.

BACKGROUND

In February 2023, Giro was driving on a surface street when he made a U-turn and then accelerated, intentionally crashing his car into the back of the victims' vehicle. Witnesses estimated that Giro was traveling between 40 and 50 miles per hour at impact. He was suicidal, asking the responding officer and a witness at the scene to kill him.

The People charged Giro with two counts of assault with a deadly weapon, a vehicle (§ 245, subd. (a)(1)), and alleged a single enhancement of great bodily injury on an individual over 70 years old (§ 12022.7, subd. (c)).

On March 27, 2023, the trial court authorized Giro's pretrial release on bail under specified conditions, including that he not drive, and granted his request for a psychological evaluation by Dr. Marine Jakubowski. Dr. Jakubowski first attempted to interview Giro on April 21, 2023. On April 24, 2023, Giro was placed on a 72-hour hold under Welfare and Institutions Code section 5150 (5150 hold). The trial court revoked his bail when he failed to appear for court on April 26, 2023. It appears that his bail was reinstated upon confirmation that he was hospitalized on the date of the hearing. Dr. Jakubowski evaluated Giro on May 26, 2023.

In August 2023, Giro moved for pretrial mental health diversion under section 1001.36. His motion described his history of mental illness, stating that he was first evaluated in 2011 at age 15 and diagnosed with social phobia, generalized anxiety disorder, major depressive disorder, and insomnia. He was again evaluated in January 2021 and diagnosed with major depressive disorder. He was placed on a 5150 hold in May 2022.

His motion attached a January 2023 evaluation by Dr. Allison Womack. Giro had sought the evaluation "due to significant struggles with mental health beginning in

2

elementary school." Dr. Womack diagnosed him with autism spectrum disorder, bipolar disorder with psychotic features, social anxiety disorder, and major depressive disorder. He was then taking lithium, olanzapine, gabapentin, and bupropion. Prior to the evaluation, he was hospitalized three times for psychosis and suicidal ideation; he "endorsed hallucinations, delusions, and paranoia." At the time of the evaluation, he had "suicidal ideation with a plan" but denied current intent or homicidal ideation. He was interested in therapy but worried about articulating himself and admitted avoiding conversations. Dr. Womack highlighted Giro's significant psychological needs, which required regular, long-term therapy to develop coping and social skills. Because of his autism spectrum disorder diagnosis, Dr. Womack suggested supportive services from Alta California Regional Center.

Giro's motion for diversion also attached Dr. Jakubowski's written evaluation. Her report explained that she had performed testing and had reviewed various materials related to Giro's mental health history as well as the criminal complaint in this case. The report acknowledged "the potential absence of relevant historical or clinical data" and requested the opportunity to prepare a supplemental report if needed.

Dr. Jakubowski reported that Giro lived with his parents and was not in treatment during the period between Dr. Womack's evaluation and the offense. His psychiatric history included suicide attempts and five psychiatric hospitalizations. At the time of the evaluation, he was hospitalized for being a danger to himself and engaging in self-harm. He denied current suicidal or homicidal ideation, however.

Dr. Jakubowski observed cigarette burns on Giro's arms. Giro told her that he had inflicted approximately 100 burns while experiencing a command hallucination telling him that " 'if I didn't burn myself, I would be harmed.' " He used alcohol and marijuana to cope with his hallucinations.

Dr. Jakubowski diagnosed Giro with major depressive disorder with psychotic features, alcohol use disorder, substance-induced psychotic disorder, and autism spectrum

3

disorder. Based on testing, she opined that he "is at a LOWER risk for future offending. With appropriate treatment, [his] risk factors may decrease."

Dr. Jakubowski also opined that Giro's mental disorder had played a significant role in the commission of the charged offense. She stated that the offense "[o]ccurred during an episodic psychotic phase with hallucinations. During such a period, he experiences command hallucinations and struggles with appropriate coping methods. Mr. Giro was not regimented with psychotropic medications while leading up to and during the commission of the charged offense. Mr. Giro was responding to internal stimuli as it was customary for the voices to instruct him to engage in activities; otherwise, he or his mother would be hurt."

Dr. Jakubowski additionally opined that Giro would not pose an unreasonable risk to public safety if treated in the community. Specifically, she noted: "Mr. Giro denied suicidal and homicidal ideation, plans, and intent. Provided his current presentation and history of maladaptive behaviors, some risk factors are present." Testing placed him in the "low-moderate range for risk of recidivism" and would support placement and treatment in the community "for drug and alcohol use (with testing and monitoring) coupled with mental health treatment programming with supervision." Based on the information reviewed, Dr. Jakubowski opined that Giro "is currently not at imminent risk for harm to self as he denied experiencing current suicidal ideation, intent, and plan and has not recently engaged in any self-injurious behaviors." She further stated that he "is not a danger to himself or others based on his relatively stable mood and no recent acting-out behaviors, as documented in the available information." She acknowledged Giro's "history of engaging in maladaptive behaviors such as cutting and burning," stating that "[h]istorically his self-harm behaviors have been non-lethal." She also noted "there are concerns about inadvertent lethal attempts." But based on her evaluation, she concluded that Giro "**is the ideal candidate** for mental health diversion," highlighting his

4

motivation to change and possible success if provided structure and treatment. (Bolding in original.)

The People opposed Giro's motion for diversion. Their opposition conceded that Giro was eligible for diversion, but they argued that the trial court should deny his request because he presented an unreasonable risk of danger to public safety.

The trial court held a hearing on September 13, 2023, heard argument from the parties, and took the matter under submission to review the parties' filings.

On October 12, 2023, the trial court denied Giro's request for pretrial diversion. The court noted that the People had conceded that Giro satisfied all the statutory requirements for diversion except for one: whether he posed an unreasonable risk of danger to public safety, a factor that applies when a defendant presents an unreasonable risk of committing a statutorily enumerated violent offense, often described as a "super strike." The court recognized that Giro had no criminal history, but it found that his offense reflected "very serious conduct and certainly a serious risk of danger to public safety." Giro intentionally accelerated his car until he crashed into the back of the victims' vehicle. His conduct "involved a deadly weapon, and he used that deadly weapon, a car, to not only attempt to kill himself, but he inflicted great bodily injury on an elderly victim, specifically fracturing a vertebrae, and very well could have killed the two people inside the car had he been successful with his efforts." He did not know the victims and had no interaction with them prior to the incident. Giro told the responding officer that he was suicidal, repeatedly asked the officer to kill him, and made the same request of a witness. The court observed: "One of the key facts in this case is the defendant made a decision to kill himself using two very innocent people just driving on the street."

The trial court also considered the reports attached to Giro's motion. The court found it significant that Giro's final evaluation with Dr. Womack occurred a mere 18 days

5

before the crime. Dr. Womack's report identified three hospitalizations occurring in 2022 and made significant treatment recommendations that Giro had not pursued.

The trial court found unpersuasive Dr. Jakubowski's report and her opinion that Giro did not pose an unreasonable risk to public safety. The court noted that Dr. Jakubowski had reviewed mental health records and the charging document in this case, but had not read the police reports, which detailed the facts of the offense. Her report noted other limitations on her evaluation, including the "potential absence of relevant historical or clinical data." The report pointed to Giro's relatively stable mood and the absence of recent "acting-out behaviors as documented in the available information," yet did not take into account the "acting-out behavior as demonstrated by the police report." The report's ultimate conclusion also appeared to be inconsistent with Dr. Jakubowski's stated "concerns about inadvertent lethal attempts" of self-harm. In light of the "lack of review or consideration of the underlying crime reports and the limitations of the report as expressly stated by the doctor, coupled with the caveat set forth in the report and the concerns regarding lethal attempts and command hallucinations, among other aspects of the report," the court was unpersuaded by the report's conclusion that Giro did not pose an unreasonable danger to the community. Given the report's deficiencies and the seriousness of Giro's conduct, the court could not find that Giro would not pose an unreasonable risk of danger to public safety if treated in the community. "Specifically, the Court [found] there is a likelihood of the defendant committing an attempted murder or a murder." The court also found that, "even if the defendant was able to establish all the statutory elements of the diversion statute with sufficient evidence, the Court would use its discretion to decline to grant the motion given the dangerousness the defendant poses to the community."

On January 17, 2024, the trial court referred Giro for an assessment as part of the parties' consideration of a plea agreement for post-plea mental health court. On February 14, 2024, Giro pleaded no contest to one count of assault with a deadly weapon

6

in exchange for two years of formal probation, with a 365-day sentence suspended pending successful completion of mental health court, and dismissal of the remaining count and enhancing allegation. On February 28, 2024, the court sentenced Giro in accordance with his plea agreement. The terms and conditions of his probation prohibited him from driving and specified that he was subject to flash incarceration for probation violations.

Giro timely appealed, and the trial court granted a certificate of probable cause to challenge the court's denial of his request for pretrial diversion.

DISCUSSION

Giro contends that the trial court abused its discretion in denying his request for pretrial diversion under section 1001.36. Specifically, he argues that there was insufficient evidence to support the court's determination that he was at risk of committing a super strike offense if treated within the community.

To obtain pretrial mental health diversion, a defendant must make a prima facie showing that he or she is both "eligible" and "suitable" for diversion. (§ 1001.36, subds. (b), (c) & (e); *People v. Bunas* (2022) 79 Cal.App.5th 840, 859-860.) A defendant is "eligible" for diversion if he or she has been diagnosed with a mental disorder that "was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1) & (2).) Generally, a defendant is "suitable" for diversion if the defendant's symptoms would respond to mental health treatment, the defendant consents to diversion and waives the right to a speedy trial, the defendant agrees to comply with treatment as a condition of diversion, and the "defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(1)-(4).) Under section 1170.18, subdivision (c), an " 'unreasonable risk of danger to public safety' means an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Those violent felonies, commonly

7

referred to as "super strikes," include murder and attempted murder. (§ 667, subd. (e)(2)(C)(iv)(IV); *People v. Graham* (2024) 102 Cal.App.5th 787, 799.) In determining whether a defendant poses an unreasonable risk of danger to public safety, the trial court "may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).)

We review the trial court's decision to deny mental health diversion for abuse of discretion. (*People v. Graham*, *supra*, 102 Cal.App.5th at p. 795.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Ibid.*) " ' " '[T]he term judicial discretion "implies absence of arbitrary determination, capricious disposition or whimsical thinking." ' [Citation.] '[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered.' " ' " (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.) The fact that reasonable minds may differ as to the appropriate resolution of an issue does not demonstrate an abuse of discretion. (*People v. Clair* (1992) 2 Cal.4th 629, 655.) The existence of some contrary evidence likewise does not provide a basis to supplant the trial court's supported findings. (See *People v. Brown* (2024) 101 Cal.App.5th 113, 123-124; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1086.) The moving defendant maintains the burden of establishing a prejudicial abuse of discretion. (*Pacheco*, at p. 213.)

Applying this standard, we conclude that the trial court did not abuse its discretion in determining that Giro posed an unreasonable risk of committing a super strike offense. As an initial matter, we find no substantial evidence in the record supporting the court's conclusion that Giro was at risk of committing attempted murder. That crime requires a

8

specific intent to kill (*People v. Mumin* (2023) 15 Cal.5th 176, 190), and we do not discern sufficient evidence in the record before us to establish such an intent.

The trial court, however, acted within its discretion in finding an unreasonable risk that Giro could commit murder, a crime that can occur when a defendant acts with conscious disregard for life. (*People v. Mumin*, *supra*, 15 Cal.5th at p. 190.) The record before us supports the conclusion that Giro's intentional act of ramming his car at 40 to 50 miles per hour into the victims' vehicle in an attempt to commit suicide created a high probability of causing death and that Giro was aware his actions were dangerous to human life. Although no evidence in the record suggests he intended to harm the victims, he likewise took no actions to minimize the risk to them. Rather, he executed a U-turn on a residential street and sped into the back of their car in conscious disregard for their safety, fracturing the vertebrae of one of the victims.

The record also contains adequate evidence supporting the trial court's finding that highly dangerous conduct like this could recur. According to Dr. Jakubowski's report, Giro committed the charged offense while suffering from command hallucinations, which directed him to do things under threat of harm to his mother or himself. In the year before the offense, Giro was hospitalized at least twice for engaging in self-harm. After his release on bail, he was subject to two more hospitalizations in the three months between the offense and Dr. Jakubowski's evaluation. At that evaluation, Dr. Jakubowski observed cigarette burns on Giro's arms, and he explained he had inflicted over 100 burns in response to command hallucinations. Thus, while he denied suicidal ideation at the time of Dr. Jakubowski's evaluation, substantial evidence showed that he was at heightened risk of engaging in dangerous behavior like that for which he was charged.

Giro emphasizes Dr. Jakubowski's opinion that he was an "ideal candidate" for diversion. (Bolding omitted.) The trial court considered her opinion, as the statute permits (§ 1001.36, subd. (c)(4)), but found it unpersuasive. We cannot say that was an abuse of discretion. As the court noted, Dr. Jakubowski did not review the police reports

9

detailing the circumstances of Giro's offense and failed to explain concerns about "inadvertent lethal attempts." And while Dr. Jakubowski opined that treatment "may" reduce Giro's risk factors, the court noted that the offense here occurred less than three weeks after he was evaluated by Dr. Womack, who recommended various interventions that were not acted upon. Given these facts and the offense itself, it was reasonable for the court to conclude that the gaps in the expert's evaluation undermined her opinion that diversion would not pose an unreasonable risk of danger to public safety. (See, e.g., *People v. Brown*, *supra*, 101 Cal.App.5th at p. 124 [doctor's opinion that defendant did not pose a significant risk to public safety did not warrant overturning a contrary dangerousness determination supported by other evidence]; *People v. Gerson*, *supra*, 80 Cal.App.5th at p. 1086 [appellate court could not reweigh evidence to overturn trial court's determination that defendant failed to establish his eligibility for diversion].)

Giro notes as well that he was permitted to participate in mental health court as part of his plea agreement. Our review, however, is limited to the evidence before the trial court at the time the challenged decision was made. (*People v. Hartsch* (2010) 49 Cal.4th 472, 491.) Having concluded that substantial evidence supported the trial court's dangerousness finding, the fact that the court approved his plea deal providing for probation and participation in post-plea mental health court four months after denying his request for pretrial diversion is not a basis for this court to supplant the trial court's determination that he was an unreasonable risk to public safety for purposes of pretrial diversion. (See, e.g., *People v. Brown*, *supra*, 101 Cal.App.5th at pp. 123-124 [existence of some evidence in record supporting a contrary dangerousness inference is insufficient basis to overturn that finding].) Nor would it be appropriate for this court to speculate regarding the reasons for Giro's later acceptance into post-plea mental health court. Our record on appeal reflects only his acceptance into the program, not whether any circumstances had changed or the tools available at that stage of the proceedings to ensure protection of the public.

10

Finally, Giro contends that the facts of his case differ from those in which the denial of diversion was upheld.  (See, e.g., *People v. Bunas*, *supra*, 79 Cal.App.5th at p. 846 [defendant with prior strike]; *People v. Brown*, *supra*, 101 Cal.App.5th at p. 124 [defendant believed he was the victim]; *People v. Graham*, *supra*, 102 Cal.App.5th at p. 801 [history of noncompliance with rehabilitative efforts].)  But "[w]hen we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts."  (*People v. Thomas* (1992) 2 Cal.4th 489, 516.)  Here, the specific facts before the trial court—including Giro's actions purposefully crashing his car at speed into an occupied vehicle while subject to a command hallucination, his mental health history both before and after the offense, and the limitations of the expert's opinion—were sufficient to support the court's finding that diversion would pose an unreasonable risk of danger to public safety.

DISPOSITION

The judgment is affirmed.

　　　　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　　　 FEINBERG, J.


We concur:


 /s/
HULL, Acting P. J.


 /s/
MESIWALA, J.

11